**Robert A. PARTLOW, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 93–CO–1547.**

District of Columbia Court of Appeals.

Argued Feb. 8, 1995.
Decided March 21, 1996.

---

Mary C. Kennedy, Public Defender Service, with whom James Klein, Samia Fam, and David Reiser, Public Defender Service, were on the brief, for appellant.

Margaret M. Lawton, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman, and Kenneth F. Whitted, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, FARRELL, and RUIZ, Associate Judges.

Opinion for the court by Associate Judge TERRY.

Concurring opinion by Associate Judge RUIZ at p. 647.

TERRY, Associate Judge:

Appellant, seventeen years old at the time of his indictment, was charged with one count of assault with intent to commit murder while armed (AWIMWA) and related offenses. He was tried as an adult in the Criminal Division of the Superior Court pursuant to D.C.Code § 16–2301(3)(A) (1989). The jury returned a partial verdict acquitting appellant of the AWIMWA charge, but when it was unable to reach a verdict on the remaining charges, the court declared a mistrial at defense counsel's request. Appellant then moved to transfer his case back to the Family Division of the court, arguing that his acquittal on the AWIMWA charge removed him from the jurisdiction of the Criminal Division. The court denied appellant's motion as well as his subsequent motion to reconsider. He appeals; we affirm.

I

Appellant was charged by indictment with assault with intent to commit murder while armed,[1] possession of a firearm while committing a crime of violence,[2] and carrying a pistol without a license.[3] Although he was a juvenile, the United States Attorney's Office elected to charge him as an adult under D.C.Code § 16–2301(3)(A). After a two-day

1. D.C.Code §§ 22–503, 22–3202 (1989).

2. D.C.Code § 22–3204(b) (1995 Supp.).

3. D.C.Code § 22–3204(a) (1989).

trial, the jury was instructed and retired to deliberate. The next day the jury returned a partial verdict. It acquitted appellant of the AWIMWA charge but announced that it was unable to reach verdicts on the remaining charges, including the lesser included offense of assault with a dangerous weapon on which it had been instructed.

■ Before the jury resumed deliberations the following day, appellant moved to have his case transferred back to the Family Division, arguing that since he was no longer "charged" with an enumerated offense under D.C.Code § 16–2301(3)(A) and had not been convicted of a lesser included offense under D.C.Code § 16–2301(3)(B), the Criminal Division no longer had jurisdiction over his case. The court denied the motion. After further deliberations, the jury remained deadlocked, and the court declared a mistrial at the request of defense counsel. Appellant renewed his request for a transfer to the Family Division. The court again denied the motion, concluding that appellant was in the same position as the juvenile defendant in *Lucas v. United States*, 522 A.2d 876 (D.C.1987), who was retried as an adult for manslaughter, a lesser included offense of the crime with which he was originally charged (first-degree murder), after his conviction of manslaughter had been reversed on appeal because of trial court error. Defense counsel then filed a motion for reconsideration; the government filed an opposition, and the court denied the motion in a written order, ruling again that *Lucas* was controlling. This appeal followed.[4]

## II

■ Ordinarily the Family Division of the Superior Court has exclusive jurisdiction over a "child" accused of committing a delinquent act that would be considered a crime if committed by an adult. D.C.Code § 16–2302 (1989); *see, e.g., United States v. Hobbs*, 594 A.2d 66, 67 (D.C.1991); *Montgomery v. United States*, 521 A.2d 1150 (D.C.1987). Two exceptions to this rule allow certain juveniles to be prosecuted as adults in the court's

Criminal Division. This case involves the second of these exceptions, which enables the United States Attorney, in his or her discretion, to prosecute as an adult a sixteen- or seventeen-year-old who is "charged" with one or more serious crimes enumerated in D.C.Code § 16–2301(3). The latter statute provides in pertinent part:

> (3) The term "child" means an individual who is under 18 years of age, except that the term "child" does not include an individual who is sixteen years of age or older and—

> > (A) charged by the United States attorney with (i) murder, forcible rape, burglary in the first degree, robbery while armed, or assault with intent to commit any such offense, or (ii) an offense listed in clause (i) and any other offense properly joinable with such an offense; [or]

> > (B) charged with an offense referred to in subparagraph (A)(i) and convicted by plea or verdict of a lesser included offense....

By excluding from the definition of "child" sixteen- and seventeen-year-olds who are charged by the United States Attorney with certain serious offenses, this provision automatically terminates the jurisdiction of the Family Division and transfers jurisdiction over the juvenile to the Criminal Division for prosecution as an adult. *See United States v. Hobbs, supra*, 594 A.2d at 67; *In re M.R.*, 525 A.2d 614, 615 (D.C.1987); *In re C.S.*, 384 A.2d 407, 411 (D.C.1977); H.R.Rep. No. 91–907, 91st Cong., 2d Sess. 50 (1970). The Family Division's jurisdiction is restored if the criminal prosecution is "terminated" other than by a plea or verdict of guilty, provided that the juvenile has not been charged with another offense in the meantime. *See* D.C.Code § 16–2307(h).

Appellant argues, here as in the trial court, that the Criminal Division lost jurisdiction to try him once he was acquitted of the AWIMWA charge and the jury was unable to reach a verdict on the lesser included offense. He

---

**4.** The denial of a motion to transfer is appealable as a final order. *Choco v. United States*, 383

A.2d 333, 335 (D.C.1978).

contends that since he was no longer "charged" with any of the offenses listed in section 16–2301(3)(A), his case must be transferred back to the Family Division under section 16–2307(h). In his view, the trial court erred in relying on *Lucas v. United States, supra,* because *Lucas* construed section 16–2301(3)(B) and because he, unlike the defendant in *Lucas,* was not convicted of a lesser included offense. We are not persuaded by these arguments. We hold instead that once a juvenile has been prosecuted in the Criminal Division as an adult under D.C.Code § 16–2301(3)(A), the Criminal Division retains jurisdiction over that juvenile until final disposition of all pending charges.

■ Although *Lucas* is factually different from the case at bar, we agree with the trial court that our decision in *Lucas* is controlling here because appellant is in essentially the same position as the defendant in that case. Lucas was tried as an adult for first-degree murder while armed and related offenses committed when he was sixteen years old, but was convicted only of the lesser included offense of involuntary manslaughter while armed, as well as attempted robbery and carrying a pistol without a license. After his conviction was reversed on appeal, he was retried for manslaughter and related offenses and was again convicted. In his second appeal, Lucas argued that the trial court did not have jurisdiction over him at the second trial because, even though the jury at the first trial had found him guilty of a lesser included offense within the meaning of section 16–2301(3)(B), that conviction had been reversed, and because section 16–2301(3)(B) embodies "an unstated requirement that the charge and conviction ... occur within the confines of a single trial." 522 A.2d at 878. We held that the Criminal Division does not "automatically lose[ ] jurisdiction over juveniles charged as adults as soon as the charge upon which adult treatment was founded drops out of the case" and that Lucas' second trial was simply "a continuation of the first [trial]." *Id.* at 879. These principles apply as well to the instant case. Appellant was brought within the jurisdiction of the Criminal Division when he was charged with assault with intent to commit murder while armed, one of the offenses enumerated in section 16–2301(3)(A). The fact that he was ultimately not convicted of this charge does not mean that the Criminal Division lost jurisdiction over his case. Under the single-trial principle articulated in *Lucas,* the government may retry a transferred juvenile defendant as an adult until all pending charges are resolved.

We noted in *Lucas* that our decision was consistent with the principles of double jeopardy law, although *Lucas* was not a double jeopardy case. A similar consistency is evident here. In *Lucas* we acknowledged "[t]he general rule ... that jeopardy does not fully terminate, and retrial may occur, with respect to a crime for which a person was originally convicted, notwithstanding reversal of that conviction on appeal." 522 A.2d at 879 (citing cases). Likewise, the failure of a jury to reach a verdict—as in this case—is not an event which terminates jeopardy:

> [W]ithout exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws.

*Arizona v. Washington,* 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978); *see Richardson v. United States,* 468 U.S. 317, 324–325, 104 S.Ct. 3081, 3085–3086, 82 L.Ed.2d 242 (1984); *Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982); *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). In this case, as in *Lucas,* we find a parallel in the concept of continuing jeopardy. Just as a mistrial resulting from a hung jury does not terminate jeopardy, neither does it terminate the pendency of a "charge" within the meaning of section 16–2301(3)(A). Rather, the "charge" remains alive as long as any portion of it is not finally resolved. *See Montgomery v. United States, supra,* 521 A.2d at 1151.

We are unpersuaded by appellant's assertion that the legislative history of section 16–2301 requires a different result. The legislative history is not helpful to appellant; if

anything, it undermines his argument.[5] Nor can we accept his contention that for us to construe the term "charged ... with" in section 16–2301(3)(A) as including "past" as well as "present" charges would render section 16–2301(3)(B) superfluous. Section 16–2301(3)(B) merely allows the Criminal Division to retain jurisdiction for sentencing purposes whenever a defendant is convicted of a lesser included offense, either by a verdict or by a guilty plea. It neither states nor implies that the curtailment of a trial by a mistrial before the trier of fact has reached a verdict deprives the Criminal Division of jurisdiction.[6]

The jurisdictional scheme as a whole demonstrates that the drafters of section 16–2301(3)(B) were not concerned with the effect of mistrials or reversals, but rather with termination of a prosecution by either a conviction or an acquittal (or dismissal) of the lesser charge. D.C.Code § 16–2307(h), part of the same enactment, provides that "[t]ransfer of a child for criminal prosecution terminates the jurisdiction of the [Family] Division over the child with respect to any subsequent delinquent act." At the same time, however,

> jurisdiction of the [Family] Division over the child is restored if (1) *the criminal prosecution is terminated* other than by ... a verdict of guilty [or its equivalent], and (2) at the time of the *termination of the criminal prosecution* no indictment or information has been filed for criminal

prosecution for an offense alleged to have been committed by the child subsequent to transfer.

*Id.* (emphasis added). Thus Congress, in section 16–2307(h), made "termination of the prosecution" (provided there has been no intervening charged offense) the event triggering restoration of Family Division jurisdiction. Since sections 16–2301(3)(B) and 16–2307(h) were enacted at the same time and are plainly *in pari materia,* the latter can inform our understanding of the former.

Appellant, as we understand his argument, does not contend that *any* mistrial at defense request, following acquittal on a charge enumerated in section 16–2301(3)(A), divests the Criminal Division of jurisdiction. Let us assume, for example, a case in which the jury's continued deliberations on the lesser included charge become contaminated by accidental exposure to some extra-judicial publicity, so that a mistrial becomes necessary. It could scarcely be argued that Congress intended the adult criminal court to lose jurisdiction at that point, for the prosecution would not yet have had the one full and fair opportunity to convict on the lesser charge that section 16–2301(3)(B) presumably affords it. But why should a mistrial based on a hung jury be any different?

*Lucas* counsels us in any event to look to related principles of double jeopardy.[7] In *Arizona v. Washington, supra,* the Supreme

---

**5.** In *Pendergrast v. United States,* 332 A.2d 919, 923 (D.C.1975), this court stated that Congress' intent in enacting section 16–2301(3)(A) was to "work a substantive contraction of the Juvenile Court's earlier jurisdiction." *Accord, Marrow v. United States,* 592 A.2d 1042, 1046 (D.C.1991). Furthermore, Congress placed broad charging discretion in the hands of the United States Attorney in order "to provide 'a better mechanism for separation of the violent youthful offender and recidivist from the rest of the juvenile community.'" *Id.* at 1046 (citing H.R.Rep. No. 91–907, 91st Cong., 2d Sess. 50 (1970)).

**6.** Appellant makes a related argument that to read section 16–2301(3)(A) as allowing him to be tried again as an adult, after a mistrial, would "permanently shift jurisdiction from the Family Division to the Criminal Division." He maintains that he has a constitutionally protected interest in being prosecuted as a juvenile, and that an interpretation of section 16–2301(3)(A)

that would allow prosecution as an adult without a hearing "would be incompatible with the essentials of due process." We have rejected similar arguments in the past and held that the transfer of a juvenile's case under section 16–2301(3)(A) does not violate due process. *See Marrow v. United States, supra* note 5, 592 A.2d at 1045–1046; *Brown v. United States,* 343 A.2d 48, 51 (D.C.1975).

**7.** Indeed, the statute itself (specifically, section 16–2302) reflects an intent to conform to those principles when, in dealing with discovery of the defendant's status as a child while a criminal charge is pending, it calls for differing responses by the court depending on whether "jeopardy would attach in the case ,of an adult...." D.C.Code § 16–2302(a); *see also* § 16–2302(b) (if discovery of defendant's status is not made "until after jeopardy has attached, the court shall proceed to verdict").

Court considered, for double jeopardy purposes, the appropriate degree of scrutiny of a trial judge's declaration of a mistrial over defense objection—*i.e.,* because of "manifest necessity"—on the ground of jury deadlock. In holding that the law of double jeopardy permits the trial judge to be given "broad discretion in deciding whether or not 'manifest necessity' justifies a discharge of the jury," the Court explained that a hung jury was "long considered the classic basis for a proper mistrial." 434 U.S. at 509, 98 S.Ct. at 832 (footnote omitted). Six years later, in *Richardson v. United States, supra,* the Court "reaffirm[ed] the proposition that a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which [the defendant is] subjected." 468 U.S. at 326, 104 S.Ct. at 3086.

Given these Supreme Court decisions, it is simply implausible to conclude that Congress, in section 16–2301(3)(B), attached any jurisdictional significance to a mistrial resulting from jury deadlock. This is especially true if one considers the perverse incentive that a contrary reading would create for a trial judge who is more convinced than the jury that the evidence demonstrates guilt. In light of *Lucas,* forcing continued deliberation over defense objection even at the risk of a coerced verdict might seem to be worth the price of retaining criminal court jurisdiction—that price being, at worst, reversal and a retrial under *Lucas.* Any suggestion that the loss of criminal jurisdiction under appellant's reading of section 16–2301(3)(B) would not enable a juvenile to escape judgment for his acts but would only shift the forum of adjudication to juvenile court is unconvincing. An adjudication of delinquency in a juvenile proceeding is not a conviction, and the prosecution would still have been denied its "one complete opportunity to *convict* those who have violated its laws." *Arizona v. Washington, supra,* 434 U.S. at 509, 98 S.Ct. at 832 (emphasis added).

The trial court's order denying appellant's motion to transfer his case to the Family Division and its order denying reconsideration of that ruling are accordingly

*Affirmed.*

RUIZ, Associate Judge, concurring:

I write separately to make clear what this opinion holds and what it does not reach. Our only necessary holding is a narrow one: in terms of jurisdiction, a mistrial is a "non-event" once a juvenile is properly brought before the Criminal Division. Thus, Partlow should be retried in the Criminal Division following mistrial because his case was properly brought in that Division as Partlow was charged with an enumerated offense under D.C.Code § 16–2301(3)(A), and still may be convicted of a lesser-included offense. We are not deciding, because it is premature, whether, after retrial, the Criminal Division should proceed to sentence Partlow or whether Partlow could or should be transferred to the Family Division for disposition as a juvenile. That determination depends on the offense, if any, of which Partlow is found guilty upon retrial.